WRIGHT & KREMERS, INC., Claimant, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 21986.)

Court of Claims, May 3, 1933.

*Moore, Killian & Knowles* [*Robert J. Moore* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*John L. Campbell, Assistant Attorney-General*, of counsel], for the defendant.

RYAN, J.  Claimant entered into a contract to furnish all labor and material required for construction work for exit facilities and fire stops in the St. Lawrence State Hospital for the lump sum of $9,900, according to certain drawings and specifications furnished by the State.  The work involved certain electrical wiring and the installation of doors.  This claim is filed for two separate and distinct items which claimant alleges were extras and for which it demands pay.  The State resists the claim on the ground that these two items were clearly included and contemplated in the terms of the contract.  There is no serious dispute as to the reasonable value of the labor and materials furnished and if claimant is entitled to anything it should have the amount testified to by one of its officers.

The contract recited: " The work to be commenced promptly progressed with diligence, in the order directed and under the supervision of the Chief Engineer, in accordance with the drawings and specifications prepared by the Commissioner of Architecture.  * * *."

The first clause in the contract which is in dispute reads as follows: " Branch circuits shall be No. 14 B & S gauge wire.  The required number of wires for the switch control indicated shall be installed.  Wires shall have intermediate grade insulation.  New lights shall be connected to the existing wiring in the Buildings as directed and approved."

The new lights were installed in two of a group of five buildings connected by inclosed corridors.  Claimant was directed to extend the new wires and conduits to panel boxes located on the ceiling of the basement in one of these five buildings but not in either of those in which the exit lights were installed.  Claimant planned

and desired to connect the exit lights to the wiring in each building proper. Claimant's proposed point of connection in the first building was 230 feet less distant than the panel box, in the second building 115.5 feet less distant. Claimant installed 345.5 feet of conduit, plus 69 feet additional for cuts and bends, plus double that amount of wire and extra fittings, boxes and so forth. This cost claimant for labor, materials, overhead and profit $241.83.

Claimant applied to the proper authorities for a variation order on contract. The State's chief engineer rejected the application and informed claimant that under its contract it was required to do what the State ordered. Claimant contends that it should have been permitted to connect the exit lights as planned and desired by it. However, the State's engineer in charge of construction testified that if they were so connected the lights would be extinguished when the interior lights of the building were extinguished; that it was desired to have them on an extra circuit so that the exit lights could remain lighted when the building lights were out, and that the only way this could be done was to run the conduits to the panel boxes as claimant was required to do.

Claimant urges that the words " as directed " did not mean " where directed," and that if the State contemplated requiring the connection to be made with the panel boxes it should have said so and that the drawings should have shown, as they did not, the location of these boxes.

We are unable to sustain claimant in its contention. The contract provided that the work should be done under the direction and supervision of the chief engineer and that the new lights should be connected as directed and approved. The panel boxes were part of the existing wiring in the " buildings," although perhaps not in the immediate building being provided with the new exit lights. It seems to us entirely reasonable that these lights should be on their own independent circuit. At any rate that was the plan which the chief engineer approved and we cannot see that his decision was unreasonable or arbitrary or that claimant was required to do anything not fairly within the terms of its contract.

Claimant's second demand is for extra labor and material furnished in placing three coats of paint on twenty-three kalamein doors. A kalamein door is made of wood and covered with sheet metal.

Section 16-B of the contract was entitled " kalamein work." The amendments to section 16-B provided: " The contractor shall furnish all labor, materials and appliances required for kalamein work as shown on the drawings or specified in Section 16-B."

Article 1627, paragraph 16 of section 16-B recited as follows:

"Painting — Before shipment from the factory, all exposed surfaces of kalamein work shall be thoroughly cleaned and given a shop coat of red lead and linseed oil paint in accordance with Formula No. 1 as specified in Section 25."

Another part of the contract, section 25, was entitled "painting and finishing." Article 2506 of this section, paragraph 40, was entitled "explanation of finishes" and read as follows: "Type A Finish shall consist of one coat each of the following formulas, with colors added as directed:

|  | First Coat | Second Coat | Third Coat |
| --- | --- | --- | --- |
| "Interior Woodwork................ | 3 | 6 | 9 or 10 |
| "Outside Woodwork................ | 11 | 11 | 11 |
| "Metal (Interior and Exterior)....... | 12 | 5 | 8, 9 or 10." |

The amendments to section 25 read as follows: "Work included — The contractor shall furnish all labor, materials and appliances required for painting and finishing as shown on the drawings, or specified in Section 25 and in general including:

"(a) Type A finish on all interior and exterior white pine and metal work including existing fire escape."

Claimant provided the shop coat of red lead and linseed oil paint as required by article 1627. It was then directed to put three coats of type A finish on the kalamein doors. This cost claimant for labor, materials, overhead and profit $249.33. Claimant insists that it was not required to do this work because a separate part of the contract, section 14, which is entitled "Miscellaneous Metal Work," while listing all sorts of articles made of metal, does not mention kalamein doors. Claimant concedes that it put the required coats of paint on about 100 other doors, not kalamein.

A reading of the entire contract clearly indicates that the job was to be complete. It would be somewhat unusual to leave the twenty-three kalamein doors hanging with only their shop coat of red lead and linseed oil when otherwise the job was a finished product. Again we do not find that the chief engineer made any unreasonable or arbitrary demands.

Both items of the claim must be dismissed.

PARSONS, J., concurs.